

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI

EMMERICH NEWSPAPERS, INCORPORATED                         PLAINTIFF

V.                                          CAUSE NO. 3:23cv 391. TSL-MTP

PARTICLE MEDIA, INC. D/B/A NEWSBREAK                      DEFENDANT

## COMPLAINT

### JURY TRIAL DEMANDED

COMES NOW Plaintiff EMMERICH NEWSPAPERS, INCORPORATED ("Emmerich Newspapers" or "Emmerich") by and through its attorney Wilson Carroll, PLLC who files its Complaint against Defendant PARTICLE MEDIA, INC. d/b/a NewsBreak ("Particle Media") seeking damages for copyright infringement and violation of the Digital Millennium Copyright Act. This Complaint is nearly identical to one filed previously this year (*Emmerich Newspapers, Incorporated v. Particle Media, Inc. D/B/A NewsBreak*, Civil Action No. 3:23-CV-00026-TSL-MTP ("*NewsBreak 2*") but includes another 11,818 articles and 30 photographs for which copyright registrations have been received since that suit was filed but with decision dates prior to the date of this filing. Emmerich intends to file a Motion to Consolidate so that all of the acts of infringement and DMCA violations can be addressed in a single cause. In support Emmerich would show the following:

### NATURE OF THE ACTION

1.      This action seeks to recover damages that Emmerich Newspapers suffered arising from (1) Particle's willful infringement of Emmerich's copyrights, (2) Particle's circumvention of technological measures employed by Emmerich to control access to its news content, and (3) Particle's intentional alteration of Emmerich's copyright management information in order to facilitate and conceal the aforesaid copyright infringement.

2.      For a number of years, including but not limited to the years 2018 through 2021 ( when Particle stopped the practice in response to litigation previously filed by Emmerich[1]) Particle used a web crawler to systematically steal articles from Emmerich's websites[2], strip out the ads and republish them on Particle's own "NewsBreak" web application ("app") surrounded by its ads.  Sometimes the articles were published *in toto,* and other times substantial portions of the articles (headlines, pictures and parts of the story) were published.  From 2018 through 2021 Particle republished at least 33,734 stolen Emmerich articles, including 17,655 full-text articles. Particle's expert has testified there were at least *4,178,871* page views of these articles on Particle's platform.[3]  Upon information and belief, Particle published thousands more full-text articles and obtained many more page views prior to and within the date range covered by Emmerich's initial discovery request in *NewsBreak 1*.[4]

3.      Certain Emmerich's websites operate behind paywalls - the reader is required to subscribe to the website and enter a password before he or she can read articles.  Particle's web crawler was designed to hack through these paywalls and circumvent Emmerich's protective measures.  It succeeded in doing so thousands of times.

4.      Additionally, every stolen Emmerich article was identified by a unique digital filename known as a "uniform resource locator" or "URL" which included, among other things, the identity of the Emmerich newspaper where it was published.  In order to keep readers on their website instead of going to Emmerich's website, Particle systematically altered this copyright management information to delete

---

[1]  *Emmerich Newspapers, Incorporated v. Particle Media, Inc. D/B/A NewsBreak*, Civil Action No. 3:21-CV-32-KHJ-MTP ("*NewsBreak 1*") Emmerich originally sought recovery for infringement of these articles in that case but the court dismissed those claims because the articles had not yet been registered with the U.S. Copyright Office.  The case proceeded on the basis of nine articles which had been registered prior to filing suit.

[2]  Emmerich Newspapers owns and operates 19 daily and weekly newspapers in Mississippi, Louisiana and Arkansas, each of which maintains a website where news stories, articles and opinion pieces are also published. A complete list of subsidiaries and websites is set forth in paragraph 12, *infra*.

[3]  For unknown reasons Particle's expert limited his analysis to only two years' of infringing activity when the data sought by Emmerich actually covered a three-year period.  As a result, the actual number of page views is greater than this.

[4]  Although Emmerich asked for a complete list of all articles republished by Particle over a three-year period, Particle only produced a list covering two years.  As a result, Emmerich's damages claims are understated.

Emmerich's unique digital filenames and replace them with Particle's own URL's. Particle then republished Emmerich's stolen articles on its own website or app under the altered URL's millions of times.

5.     Particle's repeated and ongoing hacking of Emmerich's websites had the effect, among others, of slowing down Emmerich's websites and making them less efficient.

6.     Particle's web crawler systematically stripped out Emmerich's ads before republishing the stolen articles in Particle's website.

7.     After Emmerich's readers were diverted to Particle's website Particle placed "cookies" on those readers' computer hard drives, enabling Particle to track their internet usage, preferences and activities without their knowledge or consent and thereafter bombard them with ads and other content which they neither sought nor requested.

8.     By diverting Emmerich's readers to its website, Particle hijacked Emmerich's user engagement, thereby reducing the value of Emmerich's ad space. Every page view on Particle's website increased the value of Particle's ad space at the direct expense of Emmerich.

9.     This parasitic business model makes no pretense of transforming the stolen news stories in any manner which might constitute fair use. Particle simply copied and republished entire stories verbatim, or enough portions of stories that the effect is the same - readers who would otherwise go to Emmerich's websites failed to do so. The Court in *Newsbreak 1* determined that Particle's practice of full-text republication of Emmerich's articles was not protected by fair use and that the partial republication in the form of "snippets" is a question for a jury to decide.

10.     Contrary to its dishonest public statements, Particle made absolutely no effort to obtain Emmerich Newspapers' consent nor did it offer any compensation for the stolen work product. Particle has testified that under no circumstances would it ever consider sharing revenue derived from its news feed with publishers like Emmerich who actually create the stories listed there.

11.    Particle is not a search engine and makes no effort to drive traffic to the websites where the articles originate.  Indeed, by publishing the complete article, or significant portions of it, on its own app, Particle made a visit to Emmerich's website entirely unnecessary.  Instead of directing viewers to Emmerich's websites, Particle copied and framed replicas of Emmerich's articles on its own website.

## PARTIES

12.    Plaintiff Emmerich Newspapers, Incorporated is a Mississippi corporation headquartered at 246 Briarwood Dr. Suite 101, Jackson,  MS 39236.

13.    Defendant Particle Media, Inc. d/b/a NewsBreak  is a  Delaware  corporation  with headquarters at 2350 Mission College Boulevard, Santa Clara, California 95054.  It may be served with process on its registered agent, Corporation Service Company (d/b/a in California as CSC - Lawyers Incorporating Service), 2710 Gateway Oaks Drive, Ste. 150N, Sacramento, CA  95833.

## JURISDICTION AND VENUE

14.    This Court has jurisdiction over the subject matter of this action pursuant to (a) 28 U.S.C. §1331; (b) 28 U.S.C. §1332, in that this is an action between citizens of different states and the amount in controversy exceeds $75,000, exclusive of interest and costs; (c) 28 U.S.C. §1338; and (d) 28 U.S.C. §1367.

15.    Venue is proper in this District pursuant to 28 U.S.C. §§1391 and 1400(a).

16.    This Court has personal jurisdiction over the Defendant pursuant to Fed. R. Civ. Proc. 4(k)(1)(A)  because Defendant does business in this district and state and Defendant supplies and transmits, or offers to supply and transmit, the NewsBreak service to clients and potential clients in this district and state.

## FACTUAL BACKGROUND

**A.    EMMERICH NEWSPAPERS, INCORPORATED**

17.    Emmerich Newspapers, Incorporated is one of the largest privately owned newspaper chains in Mississippi, with additional newspapers in Louisiana and Arkansas.  It owns the following companies: J.O. Emmerich & Associates, Inc. which publishes the Enterprise-Journal in McComb, Mississippi; Delta Democrat Publishing, Inc. which publishes the Delta Democrat Times in Greenville, Mississippi; Commonwealth Publishing, Inc. which publishes the Greenwood Commonwealth in Greenwood, Mississippi; Delta Press Publishing, Inc. which publishes the Clarksdale Press Register in Clarksdale, Mississippi; Marion Publishing, Inc. which publishes the Columbian-Progress in Columbia, Mississippi; Yazoo Newspaper, Inc. which publishes the Yazoo Herald in Yazoo City, Mississippi; Sunland Publishing, Inc. which publishes the Northside Sun in Jackson, Mississippi; Simpson Publishing, Inc. which publishes the Magee Courier in Magee, Mississippi and the Simpson County News; Montgomery Publishing, Inc. which publishes the Winona Times in Winona, Mississippi and the Carrollton Conservative in Carrollton, Mississippi;  Franklinton Publishing, Inc. which publishes the Era-Leader in Franklinton, Louisiana; Charleston Publishing, Inc. which publishes the Charleston Sun-Sentinel in Charleson, Mississippi; the Clarion Publishing Company, Inc. which publishes the Dumas Clarion in Dumas, Arkansas;  Scott Publishing which publishes the Scott County Times in Forest, Mississippi; Clarke Publishing, which publishes the Clarke County Tribune in Quitman, Mississippi; Hattiesburg Publishing, Inc. which publishes the Pine Belt News in Hattiesburg, Mississippi; Tallulah Publishing, which publishes the Madison Journal in Tallulah, Louisiana; Louisville Publishing, Inc. which publishers the Winston County Journal in Louisville, Mississippi, the Webster Progress-Times and the Choctaw Plain Dealer; and the Enterprise-Tocsin, Inc. in Indianola, Mississippi, Grenada Star, Inc which publishes the Grenada Star; and Tate Record, Inc. which publishes the Tate Record in Senatobia, Mississippi. In addition to daily, twice-weekly and weekly newspapers, these subsidiaries also publish

magazines, websites and phone books in many of their markets. The following websites owned by Emmerich Newspapers are associated with the foregoing list of newspapers:

enterprise-journal.com
ddtonline.com
gwcommonwealth.com
pressregister.com
newtoncountyappeal.com
northsidesun.com
columbianprogress.com
yazooherald.net
simpsoncounty.ms
sctonline.net
hubcityspokes.com
redhillsmsnews.com
starherald.net
winonatimes.com
era-leader.com
enterprise-tocsin.com
tallahatchienews.ms
clarkecountytrib.com
dumasclarion.com
madisonjournal.com
signaturemagazine.ms
grenadastar.com
taterecord.com

18.    In most of its markets Emmerich Newspapers is the only source of local news.  It is the only news outlet covering events at city hall and the county courthouse, and the only source of breaking news of any sort. It is the only news outlet which publishes information about arrest records and foreclosures.  It is the only news outlet covering local sports and graduation ceremonies.  It is the only source of local editorial content and the only news outlet covering local births, weddings and deaths.

19.    And they do it extremely well.  Emmerich Newspapers every year wins more editorial and advertising awards than any other newspaper company in the state. Typically, Emmerich Newspapers publications win the general excellence award in every category in which they compete. In a typical year, Emmerich Newspapers publications will win over 100 editorial and advertising awards.

20.     Like newspapers all over the country, Emmerich Newspapers has adapted to the advent of the internet.  It was one of the first publishers in Mississippi to develop online websites for its newspaper content and continues to lead the way in technical innovation.  Every single newspaper published by Emmerich Newspapers has a corresponding website which enables it to update stories in real time and receive feedback from local readers in the comments section.

**B.     PARTICLE MEDIA, INC. D/B/A NEWSBREAK**

21.     Particle Media, Inc. designs and develops internet web applications. "The Company offers news application [sic] that provides personalized content, stories, local news, news digests, articles, and offline access. Particle Media serves customers worldwide."[5]   Upon information and belief, "NewsBreak" is Particle Media's most important and profitable app.

22.     At LinkedIn, Particle Media describes NewsBreak as "the Nation's #1 Intelligent Local News Platform. We connect and empower local users, local content creators, and local businesses at scale, helping people everywhere live safer, more vibrant, more truly connected lives."[6]   It goes on to describe its remarkable growth:

> Since its founding in 2015, NewsBreak has grown by leaps and bounds. We are now the #1 news app on both iOS and Android in the United States. With 11M+ daily active users and 23M+ monthly users (data source: App Annie), we're also ahead of all major news apps such as The New York Times, The Washington Post, CNN, Yahoo News, SmartNews, and Flipboard.

Id.

23.     Particle falsely claims that its growth has been achieved through *cooperation* with local publishers, suggesting that it has obtained permission to publish the stories it steals from them -- "By *forging close partnerships* with thousands of local publishers and businesses around the country, NewsBreak's priority is to help a new generation of readers find and engage with vital, locally published content and information."  Id. (emphasis added).  In fact, no such "partnership"  was ever established or

---

[5] https://www.bloomberg.com/profile/company/1646627D:US
[6] https://www.linkedin.com/company/particle-media-inc-

proposed with Emmerich Newspapers. Far from cooperating, Particle directly and dishonestly *competes* with Emmerich.

**C.   PARTICLE'S INFRINGEMENT OF EMMERICH NEWSPAPERS' COPYRIGHTS**

24.   All news stories published by Emmerich Newspapers are original works of authorship subject to copyright protection.  Emmerich Newspapers owns the copyright to all stories published on its websites.  As the copyright owner, Emmerich Newspapers has the exclusive right to, *inter alia*, reproduce, distribute, display and/or prepare derivative works based on those stories.

25.   After downloading the NewsBreak app new users are prompted to provide their location information.  This enables the app to precisely tailor the local news stories which "pop up."  The user also has the option of expanding the universe of stories by adding additional localities of interest.  All of the stories which then appear have been culled from websites for news publishers within the geographic areas defined by the user.  NewsBreak aggressively promotes these purloined new stories by providing regular alerts on the user's smartphone or tablet device, often appearing before any other apps have been opened.

26.   When the reader clicks on an alert he is directed to the NewsBreak news feed which contains scores, if not hundreds, of locally produced news stories stolen by Particle.  As the user scrolls down he is presented (along with portions of the local news stories) with a steady stream of paid ads or sponsored content.  This is how Particle makes its money. These ads and paid content are tailored to the reader's profile which has been developed by either Google or another source, providing targeted marketing which is unavailable to local publishers who choose not to use Google's ad services -- a significant unfair advantage for Particle.

27.   Of critical importance, during the time frame in question the link appearing on NewsBreak never led to Emmerich's website where the story in question originated.  Instead, when a reader clicked through he was led to a facsimile of the story which was retrofitted by Particle and "self-hosted" on Particle's website. Particle's expert Neil Zoltowski described this as a process "where a

user would click on a snippet to get to an article, and instead of being brought to an Emmerich website, it would be within the News Break app or website where the article - in this situation, Emmerich's article - would be rendered to the user." At least 2 million times all of Emmerich's digital filenames were altered and its ads were completely stripped out in this manner.

28.     Even on those occasions (at least another 2.1 million times) where a reader thought he was on Emmerich's website, Particle had actually fetched and copied an exact replica of the article on its own website *where it included its own ads as well* ("Emmerich-Framed Website Views"). Due to the altered digital filename the reader was never allowed to go to the Emmerich website where the story originated and only see Emmerich's ads. Zoltwoski described this as a process where a user was looking at an Emmerich article *"but it actually would have been still within the News Break app where News Break would have included its own ads . . . ."* Even if the reader tried to download or share the article, he was only allowed to download or send Particle's copy of the article rather than the real thing.

29.     Particle willfully and intentionally stole 33,734 articles, stripped out the ads, and republished the headline, photo and lede on its NewsBreak news feed.  Of this number, 17,655 were published in full-text format (i.e., "self-hosted") on Particle's website with no Emmerich ads.  The remainder were re-published *in toto* including Emmerich's ads along with ads inserted by Particle in frames on Particle's website ("Emmerich-Framed Website Views").  In no event was a reader ever actually redirected to Emmerich's website by clicking through.

30.     Prior to filing this lawsuit Emmerich sought and obtained copyright registrations covering 11,818 of these stolen articles (the "Registered Articles").   The decision dates on these registrations all preceded the filing of this lawsuit. A complete list of these Registered Articles is attached as Exhibit "A" and incorporated herein. Copies of the registration certificates reflecting the decision dates are attached as cumulative Exhibit "B" and incorporated herein.  Additionally, prior to filing this lawsuit Emmerich sought and obtained copyright registrations covering 30 photos which were stolen and republished by

Particle (the "Registered Photos").  A complete list of these Registered Photos is attached as Exhibit "C"

and incorporated herein.  A copy of the registration certificate reflecting the decision date is attached as

Exhibit "D" and incorporated herein.

**D.      PARTICLE'S CIRCUMVENTION OF EMMERICH'S TECHNOLOGICAL PROTECTION MEASURES (I.E., PAYWALLS)**

31.      At all relevant times certain  Emmerich's articles were hidden behind paywalls erected to

protect Emmerich's copyrighted news content.  This required the reader to subscribe to the website and

enter a password before reading an article.

32.      Particle executed its copyright infringement scheme  through  the distribution of its

"NewsBreak App," which was a device specifically designed to circumvent  technological protection

measures used by Emmerich to protect its copyrighted works. NewsBreak app users hacked through

Emmerich's paywalls thousands of times between 2019 and 2021.

33.      Particle's corporate representative falsely testified under oath that the NewsBreak app

never went behind paywalls:

Q.      Does the web crawler ever consume articles which are behind paywalls?
A.      No, we do not.  We are not able to consume content behind pay wall.

34.      In truth, of the 33,734 articles in question, at a minimum 7,479 were hidden behind

paywalls operated by just two Emmerich websites in Greenwood and McComb.  In order to steal these

articles Particle's web crawler hacked Emmerich servers and circumvented Emmerich's copyright

protection systems each time an article was fetched from one of those websites and framed or

"self-hosted" on Particle's website or app.  A complete list of the 7,479 articles stolen from behind

Emmerich's Greenwood and McComb paywalls is attached as Exhibit "E" and incorporated herein.

35.      Particle expert Neil Zoltowski testified that each time a user "clicked through" on the

news feed,  the Newsbreak app would instantaneously fetch a copy of the Emmerich article in question

and host or "frame" an exact copy of it on Particle's website.   The reader was never actually on Emmerich's website even though, by all appearances, he was.

> A user could have been taken actually to Emmerich's website, or one of its websites for its newspaper, but it actually would have still been within the NewsBreak app where NewsBreak would have included its own ads. . . . It's like a framing of someone else's website within the app. . . . NewsBreak essentially, again, for lack of a better term, was framing the Emmerich website . . . . I could have created a separate category called, you know, "Emmerich-Framed Website Views" . . . .

36.   The number of violative acts was staggering. Particle's expert, Mr. Neil Zoltowski, testified under oath:

> Q.   All right.  And then, according to the data that you were provided by Particle, 4,178,871 times in total, viewers were looking at Emmerich articles on the Particle Media website; is that correct?
> A.   Yes.
> Q.   All right.  Does that mean -- and every time that occurred, by definition, that meant somebody clicked through, correct?
> A.   Yes.

## E.   PARTICLE'S ALTERATION OF EMMERICH'S COPYRIGHT MANAGEMENT INFORMATION

37.   Particle altered Emmerich's filename and copyright management information ("CMI") on all 33,734 stolen articles by removing Emmerich's publisher information and substituting its own unique filename removing all reference to Emmerich's original filename. It did this each time a reader clicked through a link on the NewsBreak news feed (4,178,871 times in total). A complete list of the 33,734 articles stolen from Emmerich's websites and then republished with altered copyright management information is attached as Exhibit "F" and incorporated herein.  Upon information and belief, Particle substituted a different digital filename every time a reader clicked through, so that a single article read multiple times would have a different digital filename every time.

38.   Any reader who clicked-through on Particle's news feed would then read Emmerich's article either "self-hosted" (with no Emmerich ads) or framed in Particle's app (including Emmerich's ads along with Particle's ads).  Either way, the article appeared under the altered digital filename or URL.

39.     Any reader who then downloaded or shared the article did so using the altered digital filename or URL. Emmerich's original digital filename never re-appeared when the article was downloaded or shared thus enabling, facilitating and concealing the copyright infringement.

40      For example, on or about August 13, 2020 Emmerich Newspapers published an article headlined, "Board Votes Funding Increase" on the *Winona Times* website using the following digital filename: "https://www.winonatimes.com/front-page-slideshow-news/board-votes-funding-increase#sthash.bJILRy 5n.dpbs".          Particle stole this article and altered the digital filename to "https://newsbreak.com/0Wds0pAQ" or something substantially similar.

41.     On or about August 11, 2020 Emmerich published an obituary headlined, "Cristi D. Eubanks" on the *Magee Courier* website using the following digital filename: "https://www.simpsoncounty.ms/obituaries/cristi-d-eubanks#sthash.xLWv2ExQ.dpbs".  Particle stole this article and altered the digital filename to: "https://newsbreak.com/0PqzT7K6" or something substantially similar.

42.     On or about August 13, 2020 Emmerich published an article headlined "Hattiesburg Police Searching Armed Robbery Suspect" on the *Hub City Spokes* web site using the following digital filename: "https://www.hubcityspokes.com/news-hattiesburg-crime/hattiesburg-police-searchingarmed-robbery-sus pect".  Particle stole this article and altered the digital filename to: "https://newsbreak.com/ 0WdzTNKZ" or something substantially similar.

43.     On or about August 13, 2020 Emmerich published an article on the *McComb Enterprise Journal* website headlined "Parklane offense Shines In Win Over Brookhaven Academy" under the following digital filename: http://www.enterprise-journal.com/sports/article_75ffe738-ddaa-11ea-b6b7-33cc0dee69e8.html Parklane offense shines in win over Brookhaven Academy".  Particle stole this article

and altered the digital filename to: "https://newsbreak.com/0We2XoPV" or something substantially similar.

44.      On or about August 10, 2020 Emmerich published an article on the *Kosciusko Star Herald* website headlined "Ethel-heavy Kosciusko team claims Dixie Pre Major World Series" under the digital                                                                                                                 filename: "https://www.starherald.net/news-kosciusko-attala-county-sports-sports-slideshowkosciusko-ethel-front-page-slideshow/ethel". Particle stole this article and altered the digital filename to: "https://newsbreak.com/0PqGYRpt" or something substantially similar.

45.      Every instance of Particle stealing Emmerich's articles followed the pattern described above. Particle would delete Emmerich's digital filename and republish the articles under its own unique digital filename. Because Emmerich's digital filename was completely eliminated Emmerich had no way of knowing Particle was posting its articles on Particle's website.

46.      These articles were then republished either as snippets on the NewsBreak news feed, in full-text format (i.e., "self-hosted") by Particle on its website, or framed by Particle on its website. The name of the publisher and headline were removed from the digital filename by Particle in every subsequent re-publication of these articles.

47.      Furthermore, anyone copying or sharing these articles automatically did so using Particle's altered digital filename, and not the digital filename originally used by Emmerich, thereby enabling, facilitating and concealing the copyright infringement. This also ensured that all online readers (including readers of shared articles) remained on Particle's website and not on Emmerich's websites where the articles originated.

48.      Emmerich's original digital filename never re-appeared in subsequent downloads or shares from Particle's website. As a result, Particle  distributed Emmerich's copyrighted work knowing

that CMI had been removed or altered without authorization and knowing, or having reasonable grounds to know, that such distribution would induce, enable, facilitate, or conceal a copyright infringement.

49.     Particle altered Emmerich's CMI in this manner at least 4,178,871 times (i.e., every time a reader clicked through for a page view).

50.     The NewsBreak app continues to work in exactly the same way.

51.     The NewsBreak app is a technology that enables viewers to circumvent technological measures put in place by copyright holders like Emmerich to control access to or uses of their copyright work. Particle distributed, and continues to distribute, the NewsBreak app in violation of the DMCA's anti-trafficking provisions.

52.     Emmerich's copyright management information (i.e., the digital filename for each article) was specifically intended to direct viewers to Emmerich's own websites.  Particle could only have directed 4,178,871 click-throughs to *its* website by altering the digital filename on each stolen article. Particle altered Emmerich's CMI knowing or having reasonable grounds to know that this would induce, enable, facilitate or conceal infringement of Emmerich's rights in the articles at issue in this lawsuit.

53.     Virtually every article stolen by Particle contained photographs, including many works-for-hire whose copyrights are also owned by Emmerich. Each of the 33,734 "snippets" appearing on the NewsBreak news feed included an exact copy of these photographs as they appeared on Emmerich's websites without any reduction in quality or resolution. Particle used the same elements, composition, colors, arrangement, subject, lighting, angle, and overall appearance of the originals as they appeared on Emmerich's websites. These were separate and independent acts of copyright infringement. The group registrations obtained by Emmerich cover these photographs in the Registered Articles as well as the literary portion of each article. Additionally, as previously noted, Emmerich sought and obtained copyright registrations specifically covering thirty of these photographs.

54. Particle performs no journalistic function at all. It does not take information from Emmerich Newspapers' stories and revise or incorporate that information into new articles of its own creation. It merely copied significant percentages (sometimes 100%) of Emmerich Newspapers' content *verbatim* and served that content directly back to Emmerich Newspapers' own customers or potential new customers, only without Emmerich's ads. Particle does not "break" news or extract breaking facts from the articles it distributes.

55. NewsBreak is not a search engine. It does not promote or improve access to any complete, linked news story. The extent to which it takes and regurgitates copyrighted material is vastly greater than that normally done by traditional search engines such as Google or Bing. It does not transform the article in any way which would constitute fair use. Instead of driving readers to the publishers' websites, it acts as a substitute for those sites and hijacks readers who would otherwise go there.

56. Particle competes directly with Emmerich Newspapers for advertising clients and revenues. Ads for a number of Emmerich Newspapers' advertising clients can be found on the NewsBreak app, but the revenue in such cases flows to Particle instead of to Emmerich Newspapers. Emmerich Newspapers has lost advertisers to Particle as a direct result of Particle's wrongful acts.

57. Prior to filing this lawsuit Emmerich filed for and obtained group copyright registrations covering 11,818 articles stolen by Particle between 2018 and 2021. The decision dates are reflected on the certificates. Copies of said certificates are attached as Exhibit "C."

58. Particle's acts described above constitute willful infringement of Emmerich Newspapers' copyrights in the registered articles in violation of 17 U.S.C. §501 *et seq*.

59. Particle's acts described above constitute wilful circumvention of Emmerich's copyright protection systems in violation of 17 U.S.C. §1201.

60. Particle's acts described above constitute wilful interference with the integrity of Emmerich's copyright protection systems in violation of 17 U.S.C. §1202.

61. Particle's infringing actions caused actual damages which will be proven at trial. Alternatively, Emmerich will seek statutory damages.

## CLAIMS FOR RELIEF

## COUNT I - COPYRIGHT INFRINGEMENT (17 U.S.C. §101 et seq.)

62. Emmerich Newspapers repeats and realleges each and every allegation above as if fully set forth herein.

63. The Registered Articles which were published in whole or in part on NewsBreak were original, creative works and copyrightable subject matter under the laws of the United States.

64. The photographs appearing in the Registered Articles which were published in whole or in part on NewsBreak were original, creative works and copyrightable subject matter under the laws of the United States.

65. Emmerich Newspapers is the owner of valid copyrights in 6,221 Registered Articles and the photographs contained within them, and the Register of Copyrights has issued valid Certificates of Registration covering said articles and photographs.

66. Emmerich Newspapers has complied in all respects with 17 U.S.C. §§101, et seq., and has secured the exclusive rights and privileges in and to the copyrights in its news articles and photographs.

67. By its actions alleged above Particle has infringed Emmerich Newspapers's copyrights in and relating to Emmerich Newspapers' articles and photographs by, *inter alia*, reproducing, distributing and publicly displaying such copyrighted work without any authorization or other permission from Emmerich Newspapers.

68.     Particle's infringement of Emmerich Newspapers's copyrights has been deliberate, willful and in utter disregard of Emmerich Newspapers' rights.

69.     As a direct and proximate result of its wrongful conduct, Particle has obtained benefits including, but not limited to, ad revenues and investments in the company to which Particle is not entitled.

70.     Emmerich Newspapers is entitled to recover from Particle the actual damages it has sustained as a result of the acts of copyright infringement alleged above in an amount to be proven at trial.

## COUNT II - DIGITAL MILLENNIUM COPYRIGHT ACT
## CIRCUMVENTION OF COPYRIGHT PROTECTION SYSTEMS (17 U.S.C. §1201)

71.     Emmerich repeats and realleges each and every allegation above as if fully set forth herein.

72.     At least 7,479 articles stolen from the Greenwood Commonwealth and McComb Enterprise-Journal websites were protected by paywalls intended to limit access to paying customers and to protect Emmerich's copyrights in said articles. Each time a reader clicked through Particle breached Emmerich's paywall to fetch and republish the article. Upon information and belief, this happened approximately 850,000 times for the articles from Greenwood and McComb.

73.     On each occasion when these articles were stolen, Particle's web crawler used technological methods to hack and circumvent these paywalls.

74.     Each such act of circumvention of Emmerich's copyright protection system constituted a separate violation of  17 U.S.C. §1201, entitling Emmerich to statutory damages for each such act pursuant to 17 U.S.C. §1203 in an amount not less than $200.00 or more than $2,500.00 per act of circumvention. Each page view constituted a separate act of circumvention by Particle.

75.     Alternatively, Emmerich is entitled to actual damages in an amount to be proven at trial.

## COUNT III - DIGITAL MILLENNIUM COPYRIGHT ACT
## INTEGRITY OF COPYRIGHT MANAGEMENT INFORMATION (17 U.S.C. §1202)

76.    Emmerich repeats and realleges each and every allegation above as if fully set forth herein.

77.    Each time Particle stole an Emmerich article it removed and altered Emmerich's copyright management information by changing Emmerich's digital filename and substituting its own digital filename in violation of 17 U.S.C. §1202(b)(1).

78.    Each time Particle re-published Emmerich's articles knowing that the copyright management information had been altered without authority of the copyright owner constituted a separate violation of 17 U.S.C. §1202(b)(2), entitling Emmerich to statutory damages for each such act in an amount not less than $2,500.00 or more than $25,000.00 per act. Each page view (4,178,871) constituted a separate act of re-publication with altered copyright management information by Particle.

79.    Alternatively, Emmerich is entitled to actual damages in an amount to be proven at trial.

## COUNT IV.    TRAFFICKING IN PROHIBITED CIRCUMVENTION TECHNOLOGY

80.    Emmerich repeats and realleges each and every allegation above as if fully set forth herein.

81.    The NewsBreak app was designed to, and does, circumvent technological measures put in place by copyright holders such as Emmerich to control access to, or uses of, their copyright work in violation of 17 U.S.C. § 1201(a)(2) and (b).

82.    Particle illegally traffics in prohibited technology by making the NewsBreak app available to millions of users who use the app to hack Emmerich's websites and view his content without paying the customary fee.

83.    Particle's distribution of the NewsBreak app violates 17 U.S.C. §1201(a)(2), which prohibits trafficking in any technology, product, service, device, component, or part thereof, that is primarily

designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under the Copyright Act.

84.     Emmerich is entitled to recover statutory damages for each such act of trafficking pursuant to 17 U.S.C. §1203 in an amount not less than $200.00 or more than $2,500.00 per act.

85.     Furthermore, the Court should enjoin Particle from any further distribution of the NewsBreak app and require Particle to discontinue the use of this app by any existing users.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Emmerich Newspapers, Incorporated respectfully requests judgment against Defendant Particle as follows:

A.     Find that Particle has infringed Emmerich Newspapers's copyrights in the Registered Articles and Registered Photographs;

B.     Order Particle to render a full and complete accounting to Emmerich Newspapers for Particle's profits, gains, advantages or the value of the business opportunities received from the foregoing acts of infringement;

C.     Enter judgment for Emmerich Newspapers against Particle for all actual damages suffered by Emmerich Newspapers and for any profit or gain by Particle attributable to infringement of Emmerich Newspapers's intellectual property in amounts to be determined at trial;

D.     Enter judgment for Emmerich Newspapers against Particle for statutory damages based upon Particle's willful acts of circumvention of Emmerich's copyright protection systems pursuant to 17 U.S.C. §1202 and §1203.

E.     Enter judgment for Emmerich Newspapers against Particle for statutory damages based upon Particle's willful acts of interference with Emmerich's copyright management information pursuant to 17 U.S.C. §1202 and §1203.

F.      Enter judgment for Emmerich Newspapers against Particle for statutory damages based upon Particle's trafficking in prohibited circumvention technology in violation of 17 U.S.C. §1201.

G.      Enjoin Particle from further distribution of the NewsBreak app and compel Particle to discontinue the use of this app by any existing users.

H.      Award Emmerich Newspapers all costs and disbursements of this action, including reasonable attorneys' fees and costs pursuant to 17 U.S.C. §505 and §1203(b)(4) and (5);

I.      Award Emmerich Newspapers pre-judgment and post-judgment interest, to the fullest extent available, on the foregoing; and

J.      Grant such other, further and different relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff Emmerich Newspapers demands a trial by jury on all issues so triable in this action.

RESPECTFULLY SUBMITTED, this the 20th day of June, 2023.

EMMERICH NEWSPAPERS, INCORPORATED

BY: /s/ Wilson H. Carroll
          Wilson H. Carroll (MSB#5894)

OF COUNSEL:
Wilson H. Carroll
WILSON CARROLL, PLLC
2506 Cherry Street
Vicksburg, Mississippi 39180
(601)953-6579
wilson@wilsoncarroll.com

## CERTIFICATE OF SERVICE

I, Wilson H. Carroll, hereby certify that I have this day filed the foregoing document via the Court's automated filing system, which automatically forwards copies to all counsel of record.

So certified this the 20th day of June, 2023.

BY: /s/ Wilson H. Carroll
          Wilson H. Carroll (MSB#5894)

EXHIBITS TO BE FILED
ELECTRONICALLY
VIA THE COURT'S AUTOMATED FILING
SYSTEM